Guzman Mejia v. Garland

BIA
Conroy, IJ
A206 013 780

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15ᵗʰ day of July, two thousand twenty-four.

PRESENT:
> RAYMOND J. LOHIER, JR.,
> STEVEN J. MENASHI,
> EUNICE C. LEE,
> *Circuit Judges.*

_____

ARLINGTON NAHUN GUZMAN MEJIA,
> *Petitioner,*

v.                                                             22-6167
                                                               NAC

MERRICK B. GARLAND, UNITED
STATES ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:                Zoey Jones, Esq., Brooklyn Defender Services, Brooklyn, NY.

**FOR RESPONDENT:**          Brian Boynton, Principal Deputy Assistant Attorney General; Anthony P. Nicastro, Assistant Director; Jenny C. Lee, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Arlington Nahun Guzman Mejia, a native and citizen of Honduras, seeks review of a March 10, 2022, decision of the BIA affirming an April 16, 2021, decision of an Immigration Judge ("IJ") denying his application for deferral of removal under the Convention Against Torture ("CAT"). *In re Arlington Nahun Guzman Mejia,* No. A 206 013 780 (B.I.A. Mar. 10, 2022), *aff'g* No. A 206 013 780 (Immigr. Ct. N.Y.C. Apr. 16, 2021). We assume the parties' familiarity with the underlying facts and procedural history.

We review the IJ's decision as supplemented and modified by the BIA. *See Yan Juan Chen v. Holder*, 658 F.3d 246, 251 (2d Cir. 2011); *Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005). We review factual findings for substantial evidence and questions of law de novo. *See Paloka v. Holder*, 762 F.3d 191, 195 (2d Cir. 2014). "[T]he administrative findings of fact are conclusive unless

2

any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## I. Deferral of removal under the CAT

A CAT applicant has the burden to show that he is "more likely than not to be tortured" in the country of removal. 8 C.F.R. §§ 1208.16(c)(2), 1208.17(a). "Analysis of a CAT claim boils down to a two-step inquiry." *Garcia-Aranda v. Garland*, 53 F.4th 752, 758 (2d Cir. 2022). An applicant must show that (1) he "will more likely than not be subject to 'any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as . . . intimidating or coercing him or her or a third person,'" and (2) "his . . . likely future harm will be 'inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity.'" *Id*. at 759 (quoting 8 C.F.R. § 1208.18(a)(1)). Acquiescence of a public official requires that the official, "prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent it." 8 C.F.R. § 1208.18(a)(7). The applicant bears the burden of proving that he is eligible for CAT deferral. *Id.* § 1208.16(c)(2). Guzman Mejia essentially argues that he will be tortured by drug and arms

3

traffickers, including his sister's ex-partner and father of her children. Accordingly, he had to establish that it was "more likely than not that local police acting under color of law will themselves participate in those likely . . . actions or acquiesce in those likely . . . actions." *Garcia-Aranda*, 53 F.4th at 761.

The agency did not err in concluding Guzman Mejia failed to establish that Honduran authorities would acquiesce to his torture, and that finding is dispositive of his CAT claim. *See Khouzam v. Ashcroft*, 361 F.3d 161, 171 (2d Cir. 2004) (stating that torture requires that "government officials know of or remain willfully blind to an act and thereafter breach their legal responsibility to prevent it"). Guzman Mejia's own arrest in Honduras illustrates that police at least respond to complaints and try to enforce the law. He testified that he was arrested and detained in 2004 under a false accusation when an ex-partner filed a complaint "out of jealousy"; he was released after a week when the police found no grounds to charge him. Cert. Admin. R. 107. In addition, his family previously relied on the police to arrest and issue an order of protection against his nephew, whom Guzman Mejia alleged was a trafficker who threatened the family. And he did not alert the police to other dangers. He did not report his 2005 assault by alleged arms traffickers because he believed that his attackers "were going to be even more mad

4

because . . . the police themselves were going to notify them" of the complaint. However, the police informing the subject of a complaint does not establish that police would acquiesce to further attacks (or torture); rather, it indicates that police follow the law, which "requires police to inform persons of the grounds for their arrest." *Id.* at 623 (2019 State Dep't Rep.).

Finally, as the agency found, the country conditions evidence reflects both corruption and government efforts to combat it. The State Department reported widespread government corruption, extrajudicial killings, life-threatening prison conditions, and violent crimes committed by gangs and drug traffickers, but also that the government is addressing corruption by "arresting and charging members of congress, judges, prosecutors, sitting and former senior officials, mayors and other local authorities, and police officers." As evidence of widespread corruption, Guzman Mejia cites the U.S. indictment of former Honduran president Juan Orlando Hernandez and "a slew of other" officials for taking bribes from drug traffickers, but such actions show the country is fighting corruption because Honduras authorized the extradition of Hernandez. In sum, given the lack of particularized evidence that the police were complicit or ignored complaints against Guzman Mejia or his family, the evidence that the police helped his family

when approached about the nephew, and country conditions evidence of both corruption and anti-corruption efforts, the record does not compel a conclusion that officials would acquiesce or remain "willfully blind" to Guzman Mejia's torture and "thereafter breach their legal responsibility to prevent it." *Khouzam*, 361 F.3d at 171; *see also Quintanilla-Mejia v. Garland*, 3 F.4th 569, 593 (2d Cir. 2021) (holding that when "the agency's conclusion finds support in record evidence, [a petitioner] cannot secure CAT relief by pointing to conflicting evidence that might support—but not compel—a different conclusion").

## II. Due Process

To prevail on a due process claim, a petitioner must demonstrate that he was deprived of a "full and fair opportunity" to present his case, *Burger v. Gonzales*, 498 F.3d 131, 134 (2d Cir. 2007), and resulting prejudice, *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008).

Guzman Mejia, through counsel, stipulated that he would testify consistently with his personal statements, which the IJ noted were detailed, and he agreed to answer questions posed by counsel prior to cross examination. The IJ gave full weight to his statements as well as to his sister's written statement outlining her abuse by her former partner and her fear for her brother's return.

6

Although the IJ and counsel inititally agreed that Guzman Mejia would limit his testimony to half an hour to fill in gaps from his statements, he testified for over an hour on direct, followed by cross examination and redirect. Guzman Mejia assured the IJ he had understood and heard everything during his testimony, despite difficulties with the audio quality. On this record, he has not shown that he was deprived of "a full and fair opportunity" to present his case. *Burger*, 498 F.3d at 134.

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

7